## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| LEANNE SPARLING and MICHAEL J. SPARLING, on behalf of and as representatives for MICHAEL L. SPARLING, deceased, | §<br>§<br>§<br>§<br>§ | |
| **Plaintiffs,** | §<br>§ | |
| v. | §<br>§ | |
| JONATHAN VINCENT DOYLE, an individual; JACOB GEISSLER, an individual; USPLABS JACK3D, LLC; USPLABS, LLC; USPS HOLDING, LLC; GNC CORPORATION; NATURAL ALTERNATIVES INTERNATIONAL, INC.; and DOES 1-500, inclusive, | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | EP-13-CV-00323-DCG |
| **Defendants.** | §<br>§ | |

## GRANTING IN PART, DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

Presently before the Court is Defendants USPlabs, LLC, Jonathan Vincent Doyle, Jacob

Geissler, USPlabs Jack3d, LLC, USPlabs Holding, LLC, GNC Corporation's (collectively, USP

Defendants) 12(b)(6) Motion to Dismiss (ECF No. 6)[1].[2] After carefully considering the motion,

responses, and applicable law, the Court enters the following opinion and orders.

### I. Background

#### A. Factual Background

---

[1] In the instant motion, USP Defendants also moved to dismiss Defendants Jonathan Vincent Doyle, Jacob Geissler, USPlabs Jack3d, LLC, and USPlabs Holding, LLC for lack of personal jurisdiction. However, in the parties' Joint Synopsis (ECF No. 45) to this Court, the parties jointly alleged that USP Defendants' motion concerning personal jurisdiction is denied as moot consequent to the transfer of the above-captioned case pursuant to 28 U.S.C. § 1404. *See* J. Synopsis 4.  As conceded by the parties without dispute, the Court denies Defendants' 12(b)(2) motion as moot.

[2] While the Court had not ruled on Defendant Natural Alternatives International, Inc.'s Motion to Dismiss Pursuant to 12(b)(6) and 12(e) (ECF No. 15), this motion is now denied as moot because Defendant Natural Alternatives International was dismissed with prejudice (ECF No. 81).

Plaintiffs allege that from late April until June 1, 2011, Plaintiff-Decedent Michael L. Sparling ("Decedent") ingested Jack3d, a dietary supplement that he purchased from GNC stores in Sacramento, California and Fort Bliss, Texas.  *See* Notice of Removal, Ex. 3, at 7, ECF No. 1 [hereinafter Complaint].  On the morning of June 1, 2011, Decedent took the recommended dosage of Jack3d, engaged in physical training at Fort Bliss, collapsed during his training, and required immediate medical attention.  *Id.* at 7–8.  Shortly thereafter, Decedent suffered cardiac arrest, hyperthermia, rhabdomyolysis, disseminated intravascular coagulation, and related injuries, and consequently died on June 1, 2011.  *Id.* at 8.

Plaintiffs Leanne Sparling and Michael J. Sparling (collectively, Plaintiffs), on behalf of and as successors and representatives of their son, Michael L. Sparling, deceased, attribute Decedent's death to Jack3d, a supplement that is made up of two allegedly dangerous ingredients, DMAA (a sympathomimetic) and CarnoSyn (a proprietary beta-alanine product).  *See id.*  At issue here, Plaintiffs allege the following claims against USP Defendants: (i) negligence; (ii) strict products liability–defective design; (iii) strict products liability–failure to warn; (iv) breach of express warranty; (v) breach of implied warranty; (vi) wrongful death; and (vii) unlawful business practices in violation of Section 17200 *et seq.* of the California Business and Professions Code.  *See id.*; Compl. 36.  Plaintiffs also request punitive and treble damages against USP Defendants.

## B.  Procedural Posture

On or about February 13, 2014, Plaintiffs filed suit against USP Defendants in the Superior Court of California, San Diego County.  *See, e.g.,* Compl.  On March 21, 2013, all the defendants removed the action to the Southern District of California pursuant to federal question jurisdiction, namely, on the basis of federal enclave jurisdiction.  *See* Notice of Removal 1.  Plaintiffs did not dispute the removal or move to remand the action to state court.  Thereafter, on October 11, 2013, the above-styled cause was transferred to the Western District Court of Texas pursuant to the

doctrine of *forum non conveniens*, 28 U.S.C. § 1404.  Order to Transfer, ECF No. 36.

Subsequently, the case was temporarily stayed while the United States Judicial Panel on

Multidistrict Litigation resolved Defendants' Motion to Transfer Pursuant to 28 U.S.C. § 1407;

however, the panel denied Defendants' motion.  Thus, the Court now addresses the pending motions

to dismiss.

## II.  Parties' Arguments

In USP Defendants' motion to dismiss, USP Defendants advance several arguments.  First,

USP Defendants allege that the federal enclave doctrine bars Plaintiffs' cause of action for

violations of the California Business and Professions Code.  USP Mot. to Dismiss 19–21.  Second,

USP Defendants allege that Texas law, not California law, applies in the instant case, and as such,

Plaintiffs' claim under the California Business and Professions Code must be dismissed.  *See id.* at

21–22.  Third, USP Defendants allege that Plaintiffs' state law claim based in the California

Business and Professions Code §17200 *et seq.* should be dismissed because it fails to meet the

heightened pleading standard under Federal Rule of Civil Procedure 9(b).  *Id.* at 22–24.  Lastly,

USP Defendants allege, whether Texas or California applies, Plaintiffs' claim for punitive damages

must be dismissed.  *Id.* at 24–26.

In response, Plaintiffs allege that assuming a conflict arises, California law applies in the

instant case.  Pls.' Resp. 21, ECF No. 12.  In addition, Plaintiffs allege that they have adequately

pled a claim pursuant to the California Business and Professions Code §17200 *et seq.*  *Id.* at 24.

Plaintiffs, further, allege that California law permits Plaintiffs to recover punitive damages against

USP Defendants for a survivorship claim.  *Id.* at 28.

## III.  Law and Discussion

Before addressing USP Defendants' Motion to Dismiss, the Court will preliminarily decide

what law applies to the underlying claims.  Because the parties did not have the opportunity to

address the issue, the Court ordered the parties to file supplemental briefing. Each of the parties respectively responded to the Court's questions, thus, this issue is ripe for determination. *See* USP Resp., ECF No 74; NAI Resp., ECF No. 75; Pls.' Resp., ECF No. 76.

## A. Applicable Law

i. Extent of Federal Enclave Jurisdiction

When an action has been transferred from another judicial district pursuant to 28 U.S.C. § 1404(a), the choice-of-law rules of the transferor court apply. *See Yelton v. PHI, Inc.*, 669 F.3d 577, 580 (5th Cir. 2012) *cert. denied,* 133 S. Ct. 191, 184 L. Ed. 2d 38 (2012) (citing *Ferens v. John Deere Co.*, 494 U.S. 516, 523 (1990) (superseded by statute on other grounds)). While the transferor court is located in California, the parties seemingly agree that the majority of the claims arose on Fort Bliss. It is undisputed by the parties that Fort Bliss is a federal enclave. *See e.g., Skipper v. United States*, 1 F.3d 349, 350 (5th Cir. 1993), *cert. denied,* 510 U.S. 1178 (1994); *United States v. Prejean*, 494 F.2d 495, 496 (5th Cir. 1974) (holding that Fort Bliss is a federal enclave). Thus, this Court's authority to preside over the instant action is grounded in federal enclave jurisdiction, a subspecies of federal question jurisdiction. Though the parties dispute whether the claim concerning unlawful business practices pursuant to Section 17200 *et seq.* of the California Business and Professions Code arose on Fort Bliss, the parties alternatively assert that the Court should exercise supplemental jurisdiction over the claim because it is based on the same set of facts. The Court first resolves the extent of federal enclave jurisdiction in the instant case concerning the claims alleged by Plaintiffs.

The key factor in determining whether federal enclave jurisdiction exists is the location of the plaintiff's injury or where the specific cause of action arose. *See Mater v. Holley*, 200 F.2d 123, 124–25 (5th Cir. 1953); *Lawler v. Miratek Corp.*, Civ. A. No. EP-09-CV-252-KC, 2010 WL 743925, at *3 (W.D. Tex. Mar. 2, 2010) (holding that the "exact geographical area" of where the

claim arose determines the applicability of the federal enclave jurisdiction).[3]  Here, the parties

agree, and the Court concedes that Plaintiffs' negligence, strict liability, breach of warranty, and

wrongful death causes of action arose on Fort Bliss.  With respect to each of these claims, the

parties uniformly hold that Decedent ingested Jack3d on Fort Bliss and that Decedent's injuries and

resulting death occurred on Fort Bliss; as such, each of the aforesaid actions are deemed to have

arose on a federal enclave.  *See* USP Resp. 3; NAI Resp. 2–3; Pls.' Resp. 2–3 ("While the [strict

liability] claims could be said to arise where the product and label were designed, respectively,

without Plaintiff-Decedent's personal injuries[,] these claims are not actionable.").  The parties

maintain that Plaintiffs' claims for punitive and treble damages also arose on the federal enclave

because Plaintiffs allege that USP Defendants' "malic[ious,] oppressi[ve,] or fraud[ulent]" conduct

caused Plaintiff-Decedent to suffer "severe injury, loss, and death." Compl. 35–36.  Concurring

with the parties, and noting that Plaintiffs' allegations of malice, oppression, and fraud arose as a

result of Decedent's injuries and death, the Court finds that Plaintiffs' claims for damages also arose

on Fort Bliss.

　　　USP Defendants and Plaintiffs dispute, however, where the claim for violation of California

Business and Professions Code § 17200 arose.  While USP Defendants assume that the claim arose

on Fort Bliss, Plaintiffs allege that the claim arose in Dallas, Texas, because the "conduct was on

the part of [USP Defendants,] and USP is headquartered and presumably initiated all alleged

conduct in Dallas, Texas." Pls.' Resp. 3.  Plaintiffs allege in their complaint that USP engaged in

---

[3] *See also Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1035 (10th Cir. 1998) (affirming the district court's ruling that the notice of removal was timely because the complaint was ambiguous as to where plaintiffs were exposed to asbestos); *Hines v. AC & S, Inc.*, 128 F. Supp. 2d 1003, 1005 (N.D. Tex. 2001) (finding that the locale of the asbestos exposure determined whether federal enclave jurisdiction exists); *Anderson v. Crown Cork & Seal*, 93 F.Supp.2d 697, 700 (E.D. Va. 2000) ("[T]he Court must determine whether federal enclave jurisdiction is established in a case where a person's alleged injuries occur on a vessel that was at some points located in a facility considered a federal enclave, and at other times was not"); *Akin v. Big Three Indus., Inc.*, 851 F. Supp. 819, 822 (E.D. Tex. 1994) (toxic exposure case removable under federal enclave jurisdiction because "the plaintiffs' claims arise out of exposure to chemicals on base in furtherance of their employment duties").

unlawful and unfair business acts and practices, and that USP's unfair conduct caused substantial injury to Plaintiff-Decedent. Compl. 33. The Court will address each of these theories in turn.

    *a. Unlawful Business Acts or Practices*

Citing to the Section 17200 of the California Business and Professions Code, Plaintiffs preliminarily appear to be alleging a claim under California's Unfair Competition Law ("UCL"). Section 17200 is a broad remedial statute that does not proscribe specific activities, but in relevant part broadly prohibits "any unlawful, unfair or fraudulent business act or practice." *See Campion v. Old Republic Home Prot. Co., Inc.*, 272 F.R.D. 517, 532 (S.D. Cal. 2011); *Law Offices of Mathew Higbee v. Expungement Assistance Servs.*, 214 Cal. App. 4th 544, 553, 153 Cal. Rptr. 3d 865, 871 (Cal. Ct. App. 2013). Because Section 17200 is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, unfair, or fraudulent. *See Aleksick v. 7–Eleven, Inc.*, 205 Cal. App. 4th 1176, 1184, 140 Cal. Rptr. 3d 796 (Cal. Ct. App. 2012).

The Court is first concerned with the business acts or practices that are deemed unlawful. By proscribing 'any unlawful' business practice, Section 17200 "borrows" violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable. *Id.* (citations and quotations omitted). Virtually any law—federal, state or local—can serve as a predicate for an action. *Id.* Moreover, "[a]n unlawful business practice under [Business and Professions Code] section 17200 is an act or practice, committed pursuant to business activity, that is at the same time *forbidden by law.*" *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1361, 108 Cal. Rptr. 3d 682, 691 (Cal. Ct. App. 2010) (internal citations and quotations committed) (emphasis added).

Serving as the basis for the UCL claim, Plaintiffs allege a slew of unlawful business acts: (i) California Civil Code § 1572 (actual fraud); (ii) *id.* at § 1573 (constructive fraud); (iii) *id.* at § 1709

(fraudulent deceit); (iv) *id.* at § 1710 (definition of deceit); (iv) *id.* at § 1770 (list of proscribed practices); (v) California Health and Safety Code § 110660 ("Any food is misbranded if its labeling is false or misleading. . . ."); (vi) *id.* at § 110760 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded."); (vii) *id.* at § 110765 ("It is unlawful for any person to misbrand any food."); (viii) 21 U.S.C. § 343 (misbranded food); (ix) 21 U.S.C. § 379aa-1 (serious adverse event reporting for dietary supplements); (x) 15 U.S.C. § 45(a)(1) (unfair methods of competition unlawful); (xi) 49 Fed. Reg. 30999 (Aug. 2, 1984) (policy statement by Federal Trade Commission regarding advertising substantiation program); (xii) § 402(f)(1)(A) of the Federal Food, Drug and Cosmetics Act, 21 U.S.C. § 342; and (xiii) the common law.  Despite the fact that Plaintiffs provide no factual allegations as to how USP Defendants violated the above sections, and notwithstanding Plaintiffs' contentions, the Court notes that  in order to assert a claim under the UCL, a person must have "suffered injury in fact and ha[ve] lost money or property as a result of such unfair competition." *Peviani v. Natural Balance, Inc.*, 774 F. Supp. 2d 1066, 1070–71 (S.D. Cal. 2011) (citing Cal. Bus. & Prof. Code § 17204 ("Actions for relief pursuant to this chapter shall be prosecuted . . . by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition").  "[A] UCL claim must establish a causal link between a defendant's business practice and the alleged harm." *In re Firearm Cases*, 126 Cal. App. 4th at 981; *see also Kwikset Corp. v. Sup. Ct.*, 51 Cal. 4th 310, 322, 120 Cal. Rptr. 3d 741, 246 P.3d 877 (Cal. 2011) (noting that actual reliance is required to have standing to sue under the UCL); *In re Tobacco II Cases*, 46 Cal. 4th 298, 326, 93 Cal. Rptr. 3d 559, 207 P.3d 20 (2009) (same).

The causation and injury-in-fact elements, while necessary to have standing to allege a UCL claim, are also important as to where the UCL claim arose.  Because Plaintiffs allege that Plaintiff-Decedent's injuries are not required for a UCL claim, Plaintiffs allege that the UCL claim arose in Dallas, Texas, because that is where Defendant USP "is headquartered [] and presumably[,]

initiated all alleged conduct." Pls.' Resp. 3.  Plaintiffs, however, fail to take into account where the injury was sustained.  *See CytoSport, Inc. v. Vital Pharm., Inc.*, 894 F. Supp. 2d 1285, 1295 (E.D. Cal. 2012) (holding that the Section 17200 cause of action accrued at the time the plaintiff suffered an injury and lost money or property due to defendant's practices).  Consistent with federal law, a Section 17200 claim accrues where Decedent suffered injury.  *Accord Mater*, 200 F.2d at 124–25. Because all parties concede that the injuries were sustained on Fort Bliss, the Court finds that Plaintiffs' UCL claim also arose on Fort Bliss.

> b.  *Unfair Business Acts or Practices*

Plaintiffs also allege a Section 17200 claim because USP Defendants engaged in "unfair" business acts and practices.  Under the UCL, "[a]n act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided."  *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 839, 51 Cal. Rptr. 3d 118 (Cal. Ct. App. 2006) (citing *Camacho v. Auto. Club of S. Cal.*, 142 Cal. App. 4th 1394, 1403, 48 Cal. Rptr. 3d 770 (Cal. Ct. App. 2006)); *see also Simpson v. Cal. Pizza Kitchen, Inc.*, Civ. A. No. 13-CV-164 JLS JMA, 2013 WL 5718479 (S.D. Cal. Oct. 1, 2013).  Notwithstanding the different theory of liability under Section 17200, Plaintiffs must still allege that Decedent sustained an injury, precisely, a substantial injury.  *See, e.g., In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1091 (S.D. Cal. 2010); *see also Kelly v. Lockheed Martin Servs. Grp.*, 25 F. Supp. 2d 1, 6 (D.P.R. 1998) ("It is the fact that a cause of action arises on a federal enclave . . . that determines that the law of the enclave is applicable.").

Plaintiffs allege that USP Defendants' "acts, omissions, misrepresentations, practices and non-disclosures" constitute unfair business acts and practices.  Compl. 33.  Throughout the complaint, Plaintiffs allege that USP Defendants' conduct caused substantial injury to Decedent.

*Id.* at 34.  While the complaint is not factually specific as to the injury or injuries sustained by Decedent with respect to USP Defendants' unfair business acts, upon reading the allegations set forth in the complaint, it appears that the injuries sustained by Decedent occurred on Fort Bliss where Plaintiffs allege that Decedent purchased, consumed and last ingested Jack3d.  Thus, for the same reasons stated above, the Court finds that Plaintiffs' claim predicated on unfair business acts and practices arose on Fort Bliss.

Thus, federal enclave jurisdictions exists over every claim that asserted by Plaintiff because the claims, here, all arose on Fort Bliss—a federal enclave.

ii.  Application of 16 U.S.C. § 457

Finding that federal enclave jurisdiction exists for every claim asserted by Plaintiffs, the Court finds, and the parties concede, that an application of 16 U.S.C. § 457 would be proper. Section 457 provides:

> In the case of the death of any person by the neglect or wrongful act of another within a national park or other place subject to the exclusive jurisdiction of the United States, within the exterior boundaries of any State, such right of action shall exist as though the place were under the jurisdiction of the State within whose exterior boundaries such place may be; and in any action brought to recover on account of injuries sustained in any such place *the rights of the parties shall be governed by the laws of the State within the exterior boundaries of which it may be.*

16 U.S.C. § 457 (emphasis added).  In the instant case, Plaintiffs allege, and Defendants do not dispute, that Decedent's death occurred on federal land; therefore, Section 457 applies.

a.  *Scope of 16 U.S.C. § 457*

The inquiry, nonetheless, does not stop here.  The Court must now assess whether Section 457 applies to all claims alleged by Plaintiffs.

The parties concede that Section 457 applies to all claims because the relevant statute allows actions to be brought "to recover on account of injuries sustained in any such place [a federal

enclave or national park]. . . ." 16 U.S.C. § 457; *see also Kelly v. Lockheed Martin Servs. Grp.*, 25 F. Supp. 2d 1, 7 (D.P.R. 1998). It is unclear, however, what constitutes "injuries" under the statute. *See Kelly*, 25 F. Supp. 2d at 7. This concern is of some significance because Plaintiffs allege causes of action related to physical injury as well as economic injury.

Albeit the meaning of "injury" in the text of Section 457 is ambiguous, the Court finds that "injury" for the purposes of this statute means personal injury because the heading of the statute refers to "personal injury" as opposed to "economic injury." *See Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998) (stating that the "title of a statute" is a tool available for the resolution of a doubt about the meaning of a statute); *Brotherhood of R.R. Trainmen v. Baltimore & Ohio R.R.*, 331 U.S. 519, 528–29 (1947) ("[T]he title of a statute and the heading of a section cannot limit the plain meaning of the text. For interpretative purposes, they are of use only when they shed light on some ambiguous word. . . ."); *United States v. Anderson*, No. 12-41297, 2014 WL 1004167, at *5 n.28 (5th Cir. Mar. 17, 2014) (*per curiam*) (unpublished) (same). This reading is also consistent with circuit and Supreme Court precedent.[4]

Nonetheless, because the parties do not dispute the application of Section 457, for the purposes of this motion only, the Court finds that Section 457 applies to all the claims alleged by Plaintiffs.

    *b.   Governing Law Incorporated by 16 U.S.C. § 457*

---

[4] *See Gulf Offshore Co., Div. of Pool Co. v. Mobil Oil Corp.*, 453 U.S. 473, 481 (1981) (in a parenthetical, describing § 457 as follows: "*personal injury* and wrongful-death actions involving events occurring [within 'within a place subject to the exclusive jurisdiction]") (emphasis added); *The Tungus v. Skovgaard*, 358 U.S. 588, 609 n.9 (1959) (stating that § 457 "makes applicable state death acts (as well as state personal injury law generally) to torts"); *Vasina v. Grumman Corp.*, 644 F.2d 112, 118 (2d Cir. 1981) ("conclud[ing] that § 457 envisions the application of the current substantive law of the surrounding state in actions for death or *personal injury* occurring within a federal enclave") (emphasis added); *Stokes v. Adair*, 265 F.2d 662, 665 (4th Cir. 1959) (stating that, in § 457, "express provision was made that in actions for death or *personal injury* in places subject to the exclusive jurisdiction of the United States") (emphasis added); *Mater v. Holley*, 200 F.2d 123, 124 (5th Cir. 1952) (noting that § 457 "expressly adopt[s] as federal law the local law of liability for negligence and wrongful death").

1.   State Substantive Law

While the law applicable to this case is determined by reference to 16 U.S.C. § 457, courts

are not in accord as to whether Section 457 requires the application of the choice-of-law rules or the

substantive law of the state surrounding the federal enclave. *See Norwood v. Raytheon Co.*, 237

F.R.D. 581, 593 n.24 (W.D. Tex. 2006) (citing *Adams v. Alliant Techsystems Inc.*, 218 F. Supp. 2d

792, 800 (W.D. Va. 2001)).  The Court endeavors to decide the applicable law because this issue

has not been uniformly resolved.

As an initial matter, it is observed that our appellate court provides relevant and arguably,

instructive guidance.  In *Mater v. Holley*, 200 F.2d 123 (5th Cir. 1952), our appellate court

determined the applicable law for negligence claims resulting in personal injuries. *Id.* at 124.

While the Fifth Circuit did not explain the underlying rationale, it stated that 16 U.S.C. § 457

"expressly adopt[ed] as federal law the local law of *liability* for negligence and wrongful death for

places over which the United States has exclusive jurisdiction." *Id.* (emphasis added).  Carefully

considering *Mater*, the Court observes that "liability" has consistently been defined as "the quality

or state of being legally obligated or accountable [another or to society]." Black's Law Dictionary

997 (9th ed. 2009) (stating that throughout the 1900s, consistent with the period that 16 U.S.C. §

457 was enacted, liability was also understood to mean the "bond of necessity that exists between

the wrongdoer and the remedy of the wrong").  It seems odd to conclude that the local law of

liability includes procedural concerns, i.e. choice-of-law rules, especially where applicable choice-

of-law rules might lead a court to apply some other state's law of liability.  Because the Court

cannot reasonably infer that the laws of liability are foreordained by choice-of-law rules, it finds

that, as a threshold matter, state substantive law, not state procedural law, controls.

A review of the legislative history also confirms the aforesaid construction.  At the time

statutory language was proposed, individuals that suffered physical injuries or wrongful deaths on

-11-

federal enclaves could not achieve legal redress because federal law did not provide for it.  The purpose of 16 U.S.C. § 457 is to therefore provide a "right of recovery on the part of the representatives [] of the person who thus suffered death as a result of the wrongful act or neglect of another [on federal land]." 69 Cong. Rec. 1471, 1486 (1928) (statement of Sen. Thomas J. Walsh). Because federal law had not previously provided any redress, 16 U.S.C. § 457 requires that the state law surrounding the federal enclave, where the injury or death occurred, should control whether the injured party has a right to seek redress.  In explaining the outcome of the statute, Senator Walsh of Montana hypothesized that if a death occurred within Hot Springs Reservation, a national park near Hot Springs, Arkansas, a right of recovery under Arkansas law could be maintained provided that Arkansas law provided for legal redress. *See id.*  Senator Walsh further articulated that "if under the law of Arkansas a right to recovery could be had if the death occurred outside the national park, the same *right of action* would exist if it occurred in the national park."  *Id.* (emphasis added). Notwithstanding the absence of discussion concerning procedural law, Senator Walsh's example evidences that it is state substantive law that controls, for it is substantive law that defines whether a right of action may be maintained.  Endeavoring to eradicate the somewhat arbitrary rights of individuals in negligence and wrongful death actions, 16 U.S.C. § 457 was enacted to supplant federal law with state substantive law so as to mirror the rights of individuals that suffered harm outside of a federal enclave. *See Ferebee v. Chevron Chem. Co.*, 736 F.2d 1529, 1534 (D.C. Cir. 1984), *cert. denied*, 469 U.S. 1062 (1984) ("The federal act was passed in an effort to put tort victims on federal land on an equal footing with those injured just outside the boundaries of the federal enclave.").

Additionally, the Court acknowledges, as other district courts have found, that 16 U.S.C. § 457 is closely analogous to the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 *et seq.* ("Lands Act"), for both acts require the application of certain state laws as federal laws in

geographic areas under the United States' exclusive legislative jurisdiction.[5]   The Lands Act makes

the Outer Continental Shelf an area of exclusive federal jurisdiction; consequently, the Act extends

the laws of the United States to this area and provides that "the laws of the adjacent State shall also

apply '[t]o the extent they are applicable and not inconsistent' with applicable federal laws, 43

U.S.C. § 1333(a)(2)." *Adams*, 218 F. Supp. 2d at 798 (quoting *Chevron Oil Co. v. Huson*, 404 U.S.

97, 100 (1971)).   In a case where the plaintiff was injured while working on a drilling rig on the

Outer Continental Shelf and the plaintiff sought damages for his personal injuries, the Supreme

Court held that under the Lands Act, state law became federal law.   *See Chevron Oil*, 404 U.S. at

100.   Thus, the "Lands Act supersedes the normal choice-of-law rules that the forum would apply,"

*Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 482 n.8 (1981), and "is itself a Congressionally

mandated choice of law provision requiring that the substantive law of the adjacent state is to

apply," *Union Tex. Petroleum Corp. v. PLT Eng'g Inc.*, 895 F.2d 1043, 1050 (5th Cir. 1990).   While

other courts have interpreted 16 U.S.C. § 457 differently,[6] the Court finds the analogies between the

Lands Act and 16 U.S.C. § 457 compelling.   Thus, just as the Lands Act provides that the law of the

adjacent state applies as federal law in actions arising from the Outer Continental Shelf, 16 U.S.C. §

457  provides that the personal injury and wrongful death laws of the state surrounding the enclave

apply as federal law in actions for personal injuries.   Deferring to the guidance of our appellate

court, the Court finds that 16 U.S.C. § 457 constitutes as an authorized choice-of-law provision that

---

[5] The Lands Act reads, in part: "To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, the civil and criminal laws of each adjacent State as of August 7, 1953 are declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf . . . ." 43 U.S.C. § 1333(a)(2); *see also Greene v. Vantage Steamship Corp.*, 466 F.2d 159, 166 n.9 (4th Cir. 1972) (noting the similarities between the Lands Act and 16 U.S.C. § 457).

[6] *See, e.g., Jenkins v. Whittaker Corp.*, 785 F.2d 720, 724 n.6 (9th Cir. 1986) (indicating that § 457 adopts the choice-of-law rules of the state surrounding the enclave); *Burgio v. McDonnell Douglas Inc.*, 747 F. Supp. 865 (E.D.N.Y. 1990) (same); *Quadrini v. Sikorsky Aircraft*, 425 F.Supp. 81 (D. Conn. 1977) (indicating that § 457 adopts neither the internal law nor choice-of-law rules of the state surrounding the enclave and leaves federal courts free to apply their own choice-of-law rules). *But see Vasina v. Grumman Corp.*, 644 F.2d 112, 117 (2d Cir. 1981) (declining to follow the *Quadrini* court's interpretation of § 457).

permits this Court to bypass the generally applicable choice of law rules, and apply Texas substantive law.

        2.   Choice-of-Law Rules

However, even if the Fifth Circuit were to hold that 16 U.S.C. § 457 requires the application of Texas' choice-of-law rules, the Fifth Circuit is still likely to hold that the 'most significant relationship' test is properly applied due to its widespread acceptance. *See Jackson v. W. Telemarketing Corp. Outbound*, 245 F.3d 518, 523 (5th Cir. 2001) (holding that Texas adheres to the most significant relationship test); *Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979); *see also Quadrini*, 425 F. Supp. at 88 (applying the most significant relationship test as a kind of federal common law instead of adopting the choice-of-law rules of the state surrounding the federal enclave).  In tort cases, this phase of the choice-of-law analysis involves two levels. The court addresses each of these levels below.  While the parties concede that, as a blanket matter, a conflict exists, none of the parties identify a specific conflict in law, i.e. availability of affirmative defenses or a limit on damages.

With respect to the first level, Section 6 of the Restatement of Conflict sets forth the general principles which guide the application of the more specific rules, and states in full:

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law. (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predicability, and uniformity of result, and (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (1971).  Applying Section 6, the Court first identifies the relevant state contacts. *See Jelec USA, Inc. v. Safety Controls, Inc.*, 498 F. Supp. 2d 945, 953 (S.D. Tex. 2007).  After the contacts are established through a factual inquiry, the choice-of-law

question is reserved to the court as a matter of law. *Id.* Selection of the applicable law depends not on the number of contacts with an interested jurisdiction, but rather on the qualitative nature of the contacts. *Id.*

The following undisputed state contacts are present in this case: Decedent was a resident of California, and at the time of the injury, Decedent was temporarily residing in Texas; Plaintiffs are domiciled in California; Defendants USPlabs Jack3d, LLC, and USPlabs Holding, LLC, are Wyoming corporations with a principal place of business in Texas; Defendant USPlabs, LLC, is a Texas corporation with a principal place of business in Texas; Defendants Doyle and Geissler are Texas residents domiciled in California; GNC's principal place of business is in Pennsylvania, and there are GNC stores in California and Texas. The parties here solely dispute as to whether California or Texas law should control.[7]

As to the first factor, the needs of the interstate and international systems, none of the parties have presented any arguments over which law is favored by this factor, and thus this factor is neutral. The second, third, and fifth factors mandate a comparison of each interested state's policies and interests underlying the issues to be decided. In this case, centered on an alleged wrongful death from an allegedly defective product, both Texas and California law have similar goals in protecting individuals from defective products and seeking remedies for wrongful or negligent conduct. Indeed, both states have established a body of law which proscribes certain unlawful conduct concerning product liability actions. Moreover, while the majority of the Defendants either reside in Texas or have a principal place of business in Texas, Texas has the incentive to regulate the conduct of Texas manufacturers. The existence of possible liability for injuries from defective products will, to a degree at least, serve as an incentive to reduce the hazardous nature of certain products, encourage safer design, and induce Texas companies to more carefully control their

---

[7] Thus, as conceded by the parties, the Court limits the relevant choice-of-law inquiry to California and Texas' contacts.

manufacturing processes. *See Baird v. Bell Helicopter Textron*, 491 F. Supp. 1129, 1140–41 (N.D. Tex. 1980). A related interest in this connection is the evident desire to force those Texas companies that fail to put adequate care into the development and marketing of products to accept the responsibility for that lack of concern. While California has similar interests, the injuries incurred by Decedent did not occur in California; further, at the time Decedent suffered the injuries, Decedent had been residing in Texas for over a month. *See Stanley v. Novartis Pharm. Corp.*, Civ. A. No. CV 11-03191-JGB OPX, 2014 WL 1316217, at \*15 (C.D. Cal. Apr. 2, 2014). Also, in comparing the interest of the forum, Texas, against that of California, Texas has a greater interest in this litigation, for the complained-of conduct appears to have been initiated in Texas and considering the parties' briefs, the causes of action all arose within in the bounds of Texas.

Next, the fourth and sixth factors were intended to apply in fields like contract law, in which the parties' planning of certain conduct is expected and even encouraged, and thus these factors are entitled to little weight in a case involving only tort causes of action. *See* Restatement (Second) of Conflict of Laws § 145(1) cmt. b (1971) ("[T]he protection of the justified expectations of the parties . . . is of lesser importance in the field of torts. . . ."). Consequently, these factors do not materially aid the choice-of-law analysis and again neither weigh for or against the application of either state's substantive laws.

Lastly, the seventh factor asks the Court to consider the ease in the determination and application of the law to be applied. Given that Texas and California law are equally easy to discern and apply, the competing interests for this factor are in equipoise and render the seventh factor neutral.

In conclusion, as to the general test for the choice-of-law analysis, the Court finds that the factors weigh in favor of the application of Texas law. While Section 6 sets out the general principles by which the more specific rules are to be applied, Section 145 adds additional factors to

-16-

be utilized in tort cases.  *See Gutierrez v. Collins*, 583 S.W.2d 312, 318–19 (Tex. 1979).  Section

145 states[8]:

> (1) The rights and liabilities of the parties with respect to an issue in tort are
> determined by the local law of the state which, with respect to that issue, has
> the most significant relationship to the occurrence and the parties under the
> principles stated in § 6. (2) Contacts to be taken into account in applying the
> principles of § 6 to determine the law applicable to an issue include: (a) the
> place where the injury occurred, (b) the place where the conduct causing the
> injury occurred, (c) the domicil, residence, nationality, place of incorporation
> and place of business of the parties, and (d) the place where the relationship,
> if any, between the parties is centered.  These contacts are to be evaluated
> according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflict of Laws § 145.  Here, the parties agree that all of Plaintiffs'

claims, with the exception of the § 17200 claim, arose on Fort Bliss, in Texas.  The Court, however,

found above that the § 17200 claim also arose on Fort Bliss, in Texas.  As such, with respect to the

first factor, the situs of the injuries occurred within the bounds of Texas.  *See Ford Motor Co. v.*

*Aguiniga*, 9 S.W.3d 252, 260 (Tex. App.—San Antonio1999, pet. denied) ("As a general rule, in

matters of a tort or personal injury, the situs of the injury determines the rights and liabilities of the

parties.").

As to the second factor, the parties agree that Decedent bought Jack3d, ingested Jack3d, and

resultantly sustained injuries on Fort Bliss, i.e. Texas.  Though Plaintiffs allege that Decedent

initially purchased Jack3d in California, and thus began his consumption of Jack3d in California,

the Court cannot ignore the factual circumstances that during the month and a half prior to his

death, he purchased, consumed, and continued to rely on the representations made by Defendants in

Texas.  While Defendants' conduct may have been directed to both California and Texas, the

conduct at issue that gave rise to Plaintiffs' causes of action took place in Texas.

---

[8] All parties concede that Section 145 of the Restatement applies.

-17-

With respect to the third factor, the parties' domicile, residence, and incorporation occurred predominantly in Texas and California, as such, this factor does not decisively favor California or Texas law.

Lastly, the fourth factor requires consideration of "the place where the relationship, if any, between the parties is centered." *See* Restatement (Second) of Conflict of Laws § 145(2)(d). "When there is a relationship between the plaintiff and the defendant and when the injury was caused by an act done in the course of the relationship, the place where the relationship is centered is another contact to be considered." *Id.* cmt. e. Any relationship between Plaintiffs and Defendants is largely incidental to the places that Decedent purchased and ingested Jack3d, which Plaintiffs allege occurred in both California and Texas. Thus, similar to the third factor, this factor does not decisively favor California or Texas law.

After considering the above factors, and noting that the parties have not identified a specific conflict in law, the Court finds that Texas has the most significant relationship to each of Plaintiffs' claims.[9] Therefore, Texas substantive law governs irrespective as to whether 16 U.S.C. § 457 mandates a choice-of-law analysis.

## B. Discussion

### i. USP Defendants' Motion to Dismiss

At issue, USP Defendants allege that Plaintiffs' claim concerning deceptive trade practices (formerly alleged as a § 17200 claim under California Business and Professions Code) should be dismissed for the following reasons: (a) it is preempted under the federal enclave doctrine; and (b) it

---

[9] *See Murthy v. Abbott Labs.*, 847 F. Supp. 2d 958, 966 (S.D. Tex. 2012), *recons. denied* (May 2, 2012) ("The Fifth Circuit has held that the location of injury is an "important factor" in determining the most appropriate law to apply[, *see Huddy v. Fruehauf Corp.*, 953 F.2d 955, 957 (5th Cir. 1992); i]ndeed, under the Restatement, in tort cases, "the applicable law will usually be the local law of the state where the injury occurred[, *see*] Restatement (Second) of Conflict of Laws § 156(2).").

fails to meet the heightened pleading standard set forth in Rule 9(b) of the Federal Rules of Civil Procedure.

   *a.  Whether Plaintiffs' Claim is Preempted by the Federal Enclave Doctrine*

While USP Defendants argue that the deceptive trade practices claim is preempted by the federal enclave doctrine, USP Defendants also inconsistently allege that 16 U.S.C. § 457 applies in the instant case.  USP Defendants do not limit the scope of 16 U.S.C. § 457, thus it appears that 16 U.S.C. § 457, and consequently, Texas substantive law, applies to every claim asserted by Plaintiffs. Nevertheless, USP Defendants allege that Plaintiffs' deceptive trade practices claim is preempted because it is not a "codification of the common law."  USP Resp. 14.  USP Defendants' emphasis on whether a claim is derived from the common law is not supported by relevant case law nor does USP Defendants cite to any relevant authority.

Further, USP Defendants' argument that "state laws adopted after the federal government acquires the land do not have any force or effect on the federal enclave" is not supported by case law.  The natural reading of 16 U.S.C. § 457 is that the law of a "federal enclave should be identical to that of the surrounding state, whatever that law might be and however it might change over time."  *Vasina*, 644 F.2d at 117.  In addition to the plain language of the statute, its history and logic belie the argument that Congress intended a static, rather than a dynamic, incorporation of state law. "The federal act was passed in an effort to put tort victims on federal land on an equal footing with those injured just outside the boundaries of the federal enclave, *see* 69 Cong. Rec. 1486 (1928) (statement of Senator Walsh); it is implausible to ascribe to a Congress so intended a contrary aim to saddle tort victims on federal land with the consequences of outdated legislation."  *Ferebee*, 736 F.2d at 1534.  Thus, agreeing with the numerous courts that have decided this issue, the Court finds that 16 U.S.C. § 457 evolves concomitantly with changes in state law and it is the state law in effect at the time of the injury that governs; likewise, it is irrelevant as to when the federal government

-19-

acquired the enclave in question. *Id.* (citing *Mathis v. General Electric Corp.*, 580 F.2d 192, 194 (5th Cir. 1978) (implicitly interpreting § 457 to apply current state law); *Greene v. Vantage Steamship Corp.*, 466 F.2d 159, 166 n.9 (4th Cir. 1972) (same); *Muniz v. United States*, 280 F. Supp. 542, 546 (S.D.N.Y. 1968) (same)). Although USP Defendants' preemption argument fails, the Court is not convinced that the deceptive trade practices claim fits within the scope of injuries covered by 16 U.S.C. § 457; however, none of the parties have addressed this issue.

    *b. Whether Plaintiffs' Claim Satisfies the Heightened Pleading Standard*

    Second, Rule 9(b) of the Federal Rules of Civil Procedure imposes a heightened level of pleading on claims involving allegations of misrepresentation and fraud.   Requiring that the plaintiff "state with particularity the circumstances constituting the [alleged fraud or misrepresentation,]" *see* Fed. R. Civ. P. 9(b), "Rule 9(b) requires the who, what, when, where, and how to be laid out.'" *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010) (quoting *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)).   Additionally, in the Fifth Circuit, the Rule 9(b) standard requires specificity as to "when and why the statements were made, and an explanation of why they were fraudulent or misrepresented." *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 800 (N.D. Tex. 2009) (It is well-established that "[c]laims alleging violations of the DTPA are subject to the requirements of Rule 9(b).").

    If Plaintiffs intend to allege a deceptive trade practices claim, then such claim fails because the Court cannot reasonably conclude *who* made the statements, *when* the misrepresentations were made, and *where* the misrepresentations were made.   In accord, it fails to satisfy the heightened pleading standard.   On the other hand, because the applicable law in this case is Texas substantive law, as opposed to California substantive law, Plaintiffs will be given at least one opportunity to amend their claims to conform to Texas substantive law.

*c. Whether Punitive Damages can be Awarded*

USP Defendants allege that Plaintiffs cannot plead punitive damages because they are not recoverable under a wrongful death suit under Texas law.  Plaintiffs concede that under Texas law, parents to the decedent cannot recover punitive damages under the wrongful death action; however, Plaintiffs (parents to Decedent), as survivors, to Decedent may recover punitive damages under Texas' Survival Statute, Texas Civil Practice and Remedies Code § 71.021.  *See Hofer v. Lavender*, 679 S.W.2d 470, 475 (Tex. 1984) (noting plaintiffs can recover exemplary damages in survival actions).  While punitive damages may be recovered, Plaintiffs do not presently allege a survival action against USP Defendants.  As such, as the Complaint stands, Plaintiffs cannot recover punitive damages.

ii.  Leave to Amend

In Plaintiffs' responss to the instant motion to dismiss, Plaintiffs request leave to amend the Complaint, if they fail to plausibly allege a claim against Defendants.  The Court does not take denial of leave to amend lightly.  As such, Plaintiffs should be given at least one opportunity to amend their claims, especially where there is an absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing parties, or futility in curing said deficiencies.  While the Court concedes that the instant case has been in the federal courts for approximately a year, several procedural impediments have prevented the parties from moving forward with the case; namely, the transfer of the case to this Court and the attempted transfer of the case to the multi-district litigation panel.  Therefore, in the instant case, the Court finds that Plaintiffs should be given the opportunity to amend their claims against Defendants and to conform to the applicable state substantive law.

## IV.  Conclusion

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants USPlabs, LLC, Jonathan Vincent Doyle, Jacob Geissler, USPlabs Jack3d, LLC, USPlabs Holding, LLC, GNC Corporation's 12(b)(6) Motion to Dismiss (ECF No. 6) is **DENIED IN PART, GRANTED IN PART WITHOUT PREJUDICE.**

**IT IS FURTHER ORDERED** that Plaintiffs Leanne Sparling and Michael J. Sparling are **GRANTED LEAVE** to **REPLEAD** any claims to overcome all of the grounds stated herein.

**IT IS FURTHER ORDERED** that Plaintiffs Leanne Sparling and Michael J. Sparling shall **FILE** an amended complaint no later than 15 days from the date of this Order, that complies with the Federal Rules of Civil Procedure 8 and 9, and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

So ORDERED and SIGNED this _30_ th day of May, 2014.

DAVID C. GUADERRAMA
UNITED STATES DISTRICT JUDGE