UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| LEANNE SPARLING and MICHAEL J. SPARLING, on behalf of and as representatives for MICHAEL L. SPARLING, deceased, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | EP-13-CV-00323-DCG |
| JONATHAN VINCENT DOYLE, an individual; JACOB GEISSLER, an individual; USPLABS JACK3D, LLC; USPLABS, LLC; USPS HOLDING, LLC; GNC CORPORATION; NATURAL ALTERNATIVES INTERNATIONAL, INC.; and DOES 1-500, inclusive, | § § § § § § § § § § | |
| Defendants. | § | |

<u>ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS</u>

Presently before the Court is Defendants Jonathan Vincent Doyle ("Doyle"), an

individual, Jacob Geissler ("Geissler"), an individual, USPLABS JACK3D, LLC, USPLABS,

LLC, USPLABS HOLDING, LLC, (collectively "USP Defendants") (all moving defendants,

collectively "Defendants") "Motion to Dismiss Plaintiffs' First Amended Complaint and

Incorporated Memorandum of Points and Authorities" ("Motion") (ECF No. 99), filed on July

28, 2014. After reviewing the parties' filings and applicable law, the Court hereby **GRANTS IN**

**PART AND DENIES IN PART** the instant motion.

## I.  Background

### A.  Factual Background[1]

Plaintiffs Leanne Sparling, Michael J. Sparling and Plaintiff-Decedent Michael L. Sparling ("Decedent") (collectively "Plaintiffs") allege that from late April until June 1, 2011, Decedent ingested Jack3d, a dietary supplement sold by USPLABS, LLC that he purchased from GNC stores in Sacramento, California and Fort Bliss, Texas. *See* Am. Compl. ¶¶ 36, 40. Decedent at no time took more than the recommended dosage of Jack3d, but on June 1, 2011, following physical training with his unit at Fort Bliss, he collapsed and subsequently suffered cardiac arrest, hyperthermia, rhabdomyolysis, disseminated intravascular coagulation, and related injuries, and consequently death. *Id.* ¶¶ 38–39.

Plaintiffs Leanne Sparling and Michael J. Sparling are Decedent's parents and sole heirs. *Id.* ¶ 34.  They bring this action on their own behalf and on behalf of and as successors and representatives of their son, Decedent, whose death they allege was caused by his ingestion of Jack3d, a supplement that is made up of two allegedly dangerous ingredients, DMAA (a sympathomimetic) and CarnoSyn (a proprietary beta-alanine product). *Id.* ¶¶ 41–42.  Plaintiffs allege the following claims against Defendants: (i) negligence; (i) strict products liability–defective design; (i) strict products liability–failure to warn; (iv) breach of express warranty; (v) breach of implied warranty; (vi) wrongful death; and (vi) survival action. *Id.* ¶¶ 90–148. Plaintiffs also request punitive and treble damages against all Defendants. *Id.* at 36.

### B.  Procedural Background

On or about February 13, 2013, Plaintiffs filed suit against Defendants in the Superior Court of California, San Diego County. *See* Notice of Removal 1, ECF No. 1.  On March 21,

---

[1]  Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court assumes as true the following well-pleaded facts from Plaintiffs' "Amended Complaint" (ECF No. 98).

2013, all the defendants removed the action to the Southern District of California pursuant to federal question jurisdiction, namely, on the basis of federal enclave jurisdiction. *Id.* On March 28, 2013, Defendants filed their "Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim" (ECF No. 6).

Thereafter, on October 11, 2013, the above-styled cause was transferred to the Western District Court of Texas pursuant to the doctrine of *forum non conveniens*, 28 U.S.C. § 1404. Order to Transfer, ECF No. 39. Subsequently, the case was temporarily stayed while the United States Judicial Panel on Multidistrict Litigation resolved Defendants' Motion to Transfer Pursuant to 28 U.S.C. § 1407; however, the panel denied Defendants' motion. ECF Nos. 66–67.

On May 28, 2014, the Court granted in part, denied in part Defendants' "Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim," and granted Plaintiffs leave to amend the complaint to remedy the deficiencies therein within 15 days. ECF No. 83.

On June 13, 2014, Plaintiff filed a motion to amend their complaint. ECF No. 89. Defendants opposed. ECF No. 93. On July 10, 2014, the Court granted in part, denied in part, Plaintiffs' motion. *See* Order Den. in Part, Granting in Part Mot. to Am., ECF No. 96. In particular, the Court allowed Plaintiff to augment their alter ego allegations based on additional facts learned during their pre-discovery investigation to give Defendants further notice of Plaintiffs' intent to pierce the corporate veil. *Id.* at 8–9. In so ruling, the Court stated that Defendants were "free to challenge Plaintiffs' allegations and alter ego liability theory in a motion to dismiss under Rule 12." *Id.* at 9.

Plaintiffs filed their Amended Complaint on July 15, 2014. ECF No. 98. Defendants filed the instant motion on July 28, 2014. Plaintiffs responded on August 11, 2014, and

Defendants replied on August 18, 2014. Pls.' Resp., ECF No. 104; Defs.' Reply, ECF No. 107. The matter being fully briefed, it is now ripe for decision.

## II.  APPLICABLE LAW

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) "is viewed with disfavor and is rarely granted." *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). In considering a Rule 12(b)(6) motion, the Court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). Though a complaint need not contain "detailed" factual allegations, a plaintiff's complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *accord Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But, in deciding whether dismissal is warranted, the Court will not accept conclusory allegations in the complaint as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). Indeed, the Court must first identify allegations that are conclusory and, thus, not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 678–79. A district court cannot dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957); *Blackburn v. City of Marshall,* 42 F.3d 925, 931 (5th Cir. 1995). Stated another way, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."

4

*Swierkiewicz v. Sorema,* 534 U.S. 506, 512 (2002) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)).

A plaintiff that alleges fraud in his or her complaint is held to a heightened pleading standard under Federal Rule of Civil Procedure 9(b). The Rule provides that a party alleging fraud "must state with particularity the circumstances constituting fraud . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003). The plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir.1997). "A dismissal for failure to plead fraud with particularity under Rule 9(b) is treated as a dismissal for failure to state a claim under Rule 12(b)(6)." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 n.8 (5th Cir. 2009) (citation and internal quotation marks omitted).

### III.   DISCUSSION

Defendants move to dismiss Plaintiffs' corporate veil–piercing theory of liability on two grounds. First, Defendants argue that Plaintiffs fail to plead sufficient facts to support liability for Doyle, Geissler, and USP Defendants as alter egos of one another. Mot. 6–7. Second, Defendants argue that the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies and so Plaintiffs pleading of veil–piercing under the "sham to perpetrate a fraud" theory is insufficient as well. Mot. 7. Finally, Defendants argue that Plaintiffs fail to plead sufficient facts to support their breach of warranty claims. Mot. 15–16. Plaintiffs respond that their pleadings are sufficient. *See* Response 4–9. Plaintiffs also argue that Defendants' Motion is procedurally barred as untimely by Federal Rule of Civil Procedure 12(g)–(h). *Id.* at 3–4.

Finally, Plaintiffs assert that even if their liability theories of alter ego or "sham to perpetrate a fraud" is found insufficient, individual liability still remains for each defendant. The Court will first consider whether Defendants' Motion is untimely.

## A.  Whether Defendants are procedurally barred

Plaintiffs argue that Defendants' Motion should be disregarded as this is Defendants' second Rule 12 motion, and Rule 12(g)(2)prohibits successive motions. Pls.' Resp. 3–4, 9. Rule 12(g) of the Federal Rules of Civil Procedure provides as follows:

> (2) Limitation on Further Motions. Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.

Fed. R. Civ. P. 12(g).  Thus, Rule 12(g)(2) technically prohibits successive motions to dismiss that raise arguments that could have been made in a prior motion.  Rule 12(h)(2), in turn, permits a party to assert a defense for failure to state a claim upon which relief can be granted in any pleading permitted under Rule 7(a), a motion for judgment on the pleadings under Rule 12(c), or at trial.  *See* Fed. R. Civ. P. 12(h)(2).

Plaintiffs argue that the claim of an alter ego relationship was present in the original complaint, and thus was available for challenge at the time of Defendants original Rule 12 motion. Pls.' Resp. 4. Defendants reply that they did in fact challenge Plaintiffs' veil-piercing as it pertained to jurisdiction in their original motion to dismiss. Defs.' Reply 4. Moreover, Defendants assert that they challenged Plaintiffs' allegations in their opposition to Plaintiffs' "Motion for Leave to Amend Complaint" (ECF No. 93). *Id.* Finally, Defendants point out that the Court implied that Defendants could file a motion to dismiss regarding the veil-piercing allegations when it granted that motion. *Id.* (citing Order Den. in Part, Granting in Part Mot. to Am. 8-9).

As an initial matter, the Court notes that Plaintiffs are technically correct: the veil-piercing allegations were present in the original complaint and Defendants failed to address them in their initial Rule 12 motion. However, a court faced with a successive Rule 12 motion may exercise its discretion to consider the new objections. Some courts will simply treat the motion as if it were filed in a timely manner. *See, e.g., Delhomme v. Caremark Rx Inc.,* 232 F.R.D. 573, 575–77 (N.D. Tex. 2005); *Tex. Taco Cabana, L.P. v. Taco Cabana of New Mexico*, 304 F.Supp.2d 903, 907 (W.D. Tex. 2003); *Quintanilla v. K-Bin, Inc.*, 993 F.Supp. 560, 562 (S.D. Tex. 1998) (citing *Gerakaris v. Champagne,* 913 F.Supp. 646, 650–51 (D. Mass.1996)). When courts have declined to exercise discretion, it has been on the grounds that the arguments turned on a factual question, and were more appropriate in a Rule 56 motion. *See, e.g., F.T.C. v. Wellness Support Network, Inc.*, No. C-10-04879 JCS, 2011 WL 4026867 (N.D. Cal. Sept. 12, 2011).

A third approach, utilized by the Fifth Circuit, is to simply construe such a motion as a Rule 12(c) motion for judgment on the pleadings. *See Jebaco, Inc. v. Harrah's Operating Co., Inc.*, 587 F.3d 314, 317 n.5 (5th Cir. 2009) (noting that although "[b]oth defendants titled their motions 'Motion to Dismiss,' and the district court also used this term[,] [b]ecause both defendants filed an answer before filing this motion, both motions were for a judgment on the pleadings" (citing Fed. R. Civ. P. 12(c))). Because additional Rule 12(b)(6) defenses can be raised in a Rule 12(c) motion for judgment on the pleadings, which is subject to the same standard of review as a motion to dismiss under Rule 12(b)(6), judicial efficiency favors construing the motion under Rule 12(c). *See Cannon v. Sixth Dist. Pub. Defender Office*, No. 09–2164, 2010 WL 5855912, at *3 (W.D. La. Oct. 26, 2010) (holding that the defendant did not waive his new defenses by failing to include them in his original Rule 12(b)(6) motion to dismiss

because the arguments could have been raised in a Rule 12(c) motion, which is evaluated under the same standard as a Rule 12(b)(6) motion); *see also Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 330 n.8 (5th Cir. 2002) ("Rule 12(b)(6) decisions appropriately guide the application of Rule 12(c) because the standards for deciding motions under both rules are the same.").

Defendants are incorrect that the Court granted them leave to file a successive motion under Rule 12(b)(6). What the Court stated was that Defendants were "free to challenge Plaintiffs' allegations and alter ego liability theory in a motion to dismiss under Rule 12." *See* Order Den. in Part, Granting in Part Mot. to Am. 9. As discussed, Defendants were and are free to assert the same defenses and objections under Rule 12(c), the appropriate procedural device. However, the Court acknowledges that its earlier order was not specific regarding which subdivision of Rule 12 applied. Regardless, in the interest of judicial efficiency, the Court will consider the Motion.

*B.   Whether Plaintiffs may attempt to pierce the corporate veil*

Defendants contend that Plaintiffs' theories for veil–piercing are insufficiently plead and should therefore be dismissed. Plaintiffs allege that USP Defendants "are engaged in a single enterprise . . . [wherein] [t]here exists . . . a unity of interest in ownership . . . such that any individuality and separateness between and among USP Defendants has ceased and the individual USP Defendants are the alter-egos of and agents of each other and exerted control over each other." Am. Compl. ¶ 8. Plaintiffs further allege that "the corporate fiction of USP Defendants, and each of them, were a sham to perpetrate a fraud . . . to shield [Defendants] from liability for breach of their legal and equitable duties." *Id.* ¶ 23. Plaintiffs state that "[f]ailure to disregard the separate corporate existence of the USP Defendants will result in injustice since

8

Geissler and Doyle founded, control and dominate the parent and multiple subsidiaries and use the corporate form to shield themselves from liability for their wrongdoing." *Id.* ¶ 20. Plaintiffs therefore request that the Court pierce the corporate veil and hold Defendants collectively liable. *Id.* ¶¶ 8, 23.

Corporate veil–piercing is "an exception to the general rule which forbids disregarding corporate existence." *Lucas v. Texas Industries, Inc.*, 696 S.W.2d 372, 374 (Tex. 1984). "The corporate form normally insulates shareholders, officers and directors from liability for corporate obligations[.]" *Castleberry v. Branscum*, 721 S.W.2d 270, 271 (Tex. 1986), superseded in part by former Bus. Corp. Act art. 2.21, recodified at Tex. Bus. Org. Code Ann. § 21.223. Veil–piercing is an equitable doctrine through which a court holds a shareholder liable for the obligations of its corporation. *Id.* at 271–72. "Texas courts apply the same veil-piercing principles to both corporations and [LLCs]." *Adams Offshore Ltd. v. OSA Int'l, LLC*, Civ. A No. H-09-0465, 2011 WL 4625371, at *8 (S.D. Tex. Sept. 30, 2011) (citing *McCarthy v. Wani Venture, A. S.*, 251 S.W.3d 573, 590 (Tex. App.—Houston [1st Dist.] 2007, pet. denied)). Veil-piercing "is not a claim or independent cause of action" under Texas law; instead, "it is a remedy to enforce a claimed substantive right." *U.S. Bank Nat'l Ass'n*, 2012 WL 3100778, at *16 (citing *W. Oil & Gas JV, Inc. v. Griffiths*, 91 F. App'x 901, 903–04 (5th Cir. 2003)).

Two of the most common bases for piercing the corporate veil under Texas law are that "(1) the corporation is the alter ego of its owners or shareholders, . . . and ([2]) the corporation is used as a sham to perpetrate a fraud."[2] *S.E.C. v. Resource Dev. Int'l, LLC*, 487 F.3d 295, 302

---

[2] Specifically, a court may disregard the corporate/LLC fiction:
(1) when the fiction is used as a means of perpetrating fraud; (2) where a corporation is organized and operated as a mere tool or business conduit [that is, as the alter ego] of another corporation; (3) where the corporate fiction is resorted to as a means of evading an existing legal obligation; (4) where the corporate fiction is employed to achieve or

(5th Cir.2007) (internal quotation marks omitted).  Whether a plaintiff may pierce an entity's veil pursuant to either the alter ego theory or the "sham to perpetrate a fraud" theory depends on whether the plaintiff's claims sound in tort or contract.  *See* Tex. Bus. Orgs. Code Ann. § 21.223. Texas "'[c]ourts have generally been less reluctant to disregard the corporate entity in tort cases than in breach of contract cases.'" *Wilson v. Davis*, 305 S.W.3d 57, 69 (Tex. App.—Houston [1st Dist.] 2009) (quoting *Lucas v. Tex. Indus., Inc.*, 696 S.W.2d 372, 375 (Tex.1984)).

The Texas Business Organizations Code provides, in pertinent part, that a shareholder ("holder")

> may not be held liable to the corporation or its obligees *with respect to . . . any contractual obligation of the corporation* ... on the basis that the holder . . . is or was the alter ego of the corporation or on the basis of actual or constructive fraud, sham to perpetrate a fraud, or other similar theory . . .

Tex. Bus. Orgs. Code Ann. § 21.223(a)(2) (emphasis added).  However, "if the obligee demonstrates that the holder . . . caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder[,]" the statute permits the use of alter ego or other similar theory to impose liability on a holder.[3]  Tex. Bus. Orgs. Code Ann. § 21.223(b).  Thus, in a contract case, alter ego or other

---

perpetrate monopoly; (5) where the corporate fiction is used to circumvent a statute; and (6) where the corporate fiction is relied upon as a protection of crime or to justify wrong.
*SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 454 (Tex. 2008) (citing *Castleberry v. Branscum*, 721 S.W.2d at 271–72).

[3] As one court explained, the statute evidences a balancing of policy interests relating to economic regulation by the Legislature:
> This balancing in part reflects a distinction, also reflected in pre-*Castleberry* cases, between the perceived relative equities of veil-piercing claimants who are asserting tort theories of recovery versus those suing in contract. The basic notion was that contract claimants, unlike most third parties suing in tort, had voluntarily chosen to deal with the corporation and, "[a]bsent some deception or fraud," would have had the opportunity to apportion, through negotiated contract terms, the risk that the entity would be unable to meet its obligations.
*Shook v. Walden*, 368 S.W.3d 604, 619–20 (Tex. App.—Austin 2012, pet. denied) (alteration in original) (citations omitted).

similar theories may be used to pierce the corporate veil only if (1) actual fraud is shown and (2) it was perpetrated primarily for the direct personal benefit of the corporation's holder. *Id.* Actual fraud involves dishonesty of purpose or intent to deceive. *Castleberry*, 721 S.W.2d at 273. (distinguishing actual fraud from the tort definition of fraud). A holder's liability for an obligation under this statute is "exclusive and preempts any other liability imposed for that obligation under common law or otherwise." Tex. Bus. Orgs. Code Ann. § 21.224; *see also Willis v. Donnelly*, 199 S.W.3d 262, 272 (Tex. 2006) (emphasizing that statutory exclusivity precludes the use of common law veil-piercing theories).

Defendants acknowledge Plaintiffs' negligence, products liability, wrongful death and survival claims sound in tort. Mot. 9. However, Defendants contend that Plaintiffs' breach of warranty claim sounds in contract and is thus subject to the restrictions in the Texas Business Organizations Code. Plaintiffs argue that this position is unsupported by case law. Specifically, Plaintiffs argue that Texas courts recognize that "breach of contract and breach of warranty are not the same cause of action." *Med. City Dallas, Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 60 (Tex. 2008). Plaintiffs argue that because the "dividing line between an action which sounds in contract and one which is tort–based is 'the nature of the injury,' specifically, 'when the injury is only the economic loss to the subject of a contract itself, the action sounds in contract[,]'" an action for damages arising from a personal injury is presumptively a tort and outside the heightened "actual fraud" standards required by Rule 9. Pls.' Resp. 10 (quoting *Med. City*, 251 S.W.3d at 61).

The Texas Supreme Court in *Med. City* noted that "while an express warranty is a distinct claim, it is nonetheless a part of the basis of a bargain and is contractual in nature." *Med. City*, 251 S.W.3d at 60 (citing Tex. Bus. & Com. Code § 2.313(a)). "[A] breach of express warranty

claim, like one for breach of contract, involves a party seeking damages based on an opponent's failure to uphold its end of the bargain." *Id.* (citing *U.S. Pipe & Foundry Co. v. City of Waco*, 108 S.W.2d 432, 434 (1937)). The Texas Supreme Court also stated that "[a]n express warranty is the result of a negotiated exchange . . . and is a 'creature of contract[.]'" *Id.* (citations omitted); *accord Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 524 n.23 (1992) (plurality opinion) (noting that "express warranty claims are said to sound in contract rather than in tort" and comparing legal definitions of tort and contract). Breach of warranty claims are therefore analyzed under the more rigorous actual fraud standard set out in the Texas Business Organizations Code.

Plaintiffs have plead both alter ego and "sham to perpetrate a fraud" in an attempt to pierce the corporate veil. The Court will consider each claim under the appropriate pleading standard.

### 1. Plaintiff's Tort Claims

#### a. *Piercing the Corporate Veil in Tort Claims: Alter Ego*

Under Texas law, "[a]lter ego applies when there is such unity between corporation and individual that the separateness of the corporation has ceased and holding only the corporation liable would result in injustice." *Bollore S.A. v. Import Warehouse, Inc.*, 448 F.3d 317, 325 (5th Cir. 2006) (quoting *Castleberry*, 721 S.W.2d at 272). An "alter ego relationship may be shown from the *total* dealings of the corporation and the individual." *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 228 (Tex. 1990) (emphasis in original). Factors that Texas courts consider include:

> [1] the total dealings of the corporation and the individual, including [a] the degree to which corporate formalities have been followed and [b] corporate and individual property have been kept separately, [2] the amount of [a] financial interest, [b] ownership, and [c] control the individual maintains over the corporation, and [3] whether the corporation has been used for personal purposes.

12

*Bollore*, 448 F.3d at 325 (quoting *Permian Petroleum Co. v. Petroleos Mexicanos*, 934 F.2d 635, 643 (5th Cir. 1991); *see also Mancorp, Inc.*, 802 S.W.2d at 228. Courts may also consider (1) the payment of alleged corporate debts with personal checks or other commingling of funds; (2) representations that the individual will financially back the corporation; (3) the diversion of company profits to the individual for his personal use; (4) inadequate capitalization; and (5) other failures to keep corporate and personal assets separate. *Doyle v. Kontemporary Builders, Inc.*, 370 S.W.3d 448, 458 (Tex. App.—Dallas 2012, pet. denied) (citing *Mancorp, Inc.*, 802 S.W.2d at 228; *Penhollow Custom Homes, LLC v. Kim*, 320 S.W.3d 366, 372 (Tex. App.—El Paso 2010, no pet.); *Sparks v. Booth*, 232 S.W.3d 853, 868 (Tex. App.—Dallas 2007, no pet.)). All of the aforementioned factors are potentially relevant; no single factor is sufficient or necessary. *See Wilson*, 305 S.W.3d at 69 (quoting *Castleberry*, 721 S.W.2d at 273). However, an individual's standing as an officer, director, or majority shareholder of an entity is, in and of itself, insufficient to support a finding of alter ego. *Penhollow*, 320 S.W.3d at 372–73; *Sparks*, 232 S.W.3d at 869. Moreover, "[p]arties are not . . . jointly liable for a corporation's obligations 'merely because they [are] part of a single business enterprise,' i.e., 'merely because of centralized control, mutual purposes, and shared finances.'" *Tryco Enters., Inc. v. Robinson*, 390 S.W.3d 497, 508 (Tex. App.—Houston [1st Dist.] 2012, pet. dism'd)) (quoting *SSP Partners*, 275 S.W.3d at 455). Rather, whether a party ignored corporate structure involves two considerations: (1) the relationship between the two entities and (2) whether the entities' use of the corporate form was illegitimate. *SSP Partners*, 275 S.W.3d at 455.

Defendants argue that "Plaintiffs fail to allege any facts" and that "[t]he issue here is Plaintiffs' failure to allege sufficient facts to support their groundless alter ego theory." Mot. 12; Defs.' Reply 5. In support of their claims, Plaintiffs grouped their factual allegations under the

following categories corresponding to the *Castleberry* factors: "Identical Ownership and Concealment of Responsible Entities," "Use of the Same Offices or Employees," "Use of Same Attorney," and "Lack of Corporate Formalities." Am. Compl. ¶¶ 9–22. Within these categories, Plaintiffs allege that Geissler and Doyle have a controlling interest in all of the USP Defendants. Am. Compl. ¶¶ 9–10. They further allege that Geissler and Doyle, acting through USPLabs, LLC, control the other USP Defendants for the purpose of disguising ownership interests and concealing the responsible entities. *Id.* ¶¶ 9–11. Plaintiffs state that Doyle, Geissler and the USP Defendants failed to observe corporate formalities and that there is such unity between them, as evidenced by the sharing of corporate resources, that the separateness between Defendants has ceased. *Id.* ¶¶ 8, 18–19. Plaintiffs also state that the corporate form has been abused to defeat a rightful claim. *Id.* ¶¶ 20–22.

The Court finds that Plaintiffs have sufficiently plead their alter ego claim at this stage of the proceeding. Plaintiffs are not relying on any one factor in their alter ego claim. Plaintiffs claim is made up of a number of factors, that when considered together, rise above a conclusory description and are legally sufficient. *Mancorp, Inc.*, 802 S.W.2d at 228 ("[An] alter ego relationship may be shown from the *total* dealings of the corporation and the individual."). Defendants attempt to distinguish two cases that Plaintiffs cite in support of their claim based on the facts.[4] Defs.' Reply 4–5. However, "[b]ecause disregarding the corporate fiction is an equitable doctrine, [courts in Texas] take[] a flexible fact–specific approach focusing on equity in determining whether the corporate veil should be pierced." *Castleberry*, 721 S.W.2d at 273. So while the factors were different in each of those cases and may not be present in this case, that does not make the pleadings in this case insufficient. Whether the weight of the evidence is such

---

[4] *Schlueter v. Carey*, 112 S.W.3d 164, 170 (Tex. App.—Fort Worth 2003, pet. denied); *Tryco Enters., Inc.*, 390 S.W.3d 497.

to support those claims is more appropriate for challenge in a motion under Rule 56 of the Federal Rules of Civil Procedure. *See Castleberry*, 721 S.W.2d at 277 (noting that alter ego issues involving questions of fact, except in special circumstances, should be determined by jury). Accordingly, the Court denies Defendants' Motion as it pertains to Plaintiffs' alter ego theory for their tort claims.

### b. *Piercing the Corporate Veil in Tort Claims: Sham to Perpetrate a Fraud*

Plaintiffs also plead "sham to perpetrate a fraud" doctrine as an alternative doctrine for piercing the corporate veil. Am. Compl. ¶ 23–27. Under Texas law,

> [t]o prove there has been a sham to perpetrate a fraud, tort claimants . . . must show only constructive fraud. . . . Under the doctrine of constructive fraud, neither fraud nor an intent to defraud need be shown as a prerequisite to disregarding the corporate entity; it is sufficient if recognizing the separate corporate existence would bring about an inequitable result.

*Castleberry*, 721 S.W.2d at 272 (internal quotations omitted). Thus, the only limitation is that the focus is on injustice or unfairness to the claimant caused by the corporation and its owners. *Pan E. Exploration Co. v. Hufo Oils*, 855 F.2d 1106, 1133 (5th Cir. 1988).

Similar but distinct from alter ego, "[s]ham to perpetrate a fraud is an equitable doctrine, and Texas courts take a flexible fact–specific approach focusing on equity." *Petroleos Mexicanos*, 934 F.2d at 643–44 (5th Cir. 1991) (citing *Castleberry*, 721 S.W.2d at 273). "Constructive fraud, as a concept, has fuzzier edges and is less susceptible of easy definition." *See In re Soza*, 542 F.3d 1060, 1072 (5th Cir. 2008) (Wiener, J., concurring) (citing *Rosen v. Matthews Const. Co., Inc.*, 777 S.W.2d 434, 437 (Tex. App.—Houston [14th Dist.] 1989), *rev'd on other grounds*, 796 S.W.2d 692 (Tex. 1990)). Whereas "[a]ctual fraud usually involves dishonesty of purpose or intent to deceive, . . . constructive fraud is the breach of some legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its

15

tendency to deceive others, to violate confidence, or to injure public interests." *Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex. 1964) (citation omitted); *see also Castleberry*, 721 S.W.2d at 273.

Defendants argue that Plaintiffs' "sham to perpetrate a fraud" theory should be dismissed because Plaintiffs do not satisfy the heightened pleading standards under Federal Rule of Civil Procedure 9(b). Mot. 13–15. Plaintiffs respond that because they need only show constructive fraud, the heightened pleading standard does not apply. Pls.' Resp. 7–8.

The Fifth Circuit has not decided whether a claim of constructive fraud must satisfy the heightened pleading standard of Rule 9(b). *See Schroeder v. Wildenthal*, No. 3:11–CV–0525–B, 2011 WL 6029727, at *4 (N.D. Tex. Nov. 30, 2011) aff'd, 515 F. App'x 294 (5th Cir. 2013). The federal district court for the Northern District of Texas has held on several occasions that a plaintiff must do so in order to defeat a motion to dismiss. *Id.* at *4–5 (summarizing cases); *but see Weston Group, Inc. v. Sw. Home Health Care, LP*, No. 3:12–CV–1964–G, 2014 WL 940329, at *2 (N.D. Tex. Mar. 11, 2014) (evaluating a tort veil piercing claim under Rule 8(a) rather than Rule 9(b)). Courts in the Western District of Texas have not been as consistent in their application of the heightened standard to constructive fraud claims. *Compare In re Crescent Res., LLC*, No. 09–11507–CAG, 2012 WL 195528 (Bankr. W.D. Tex. Jan. 23, 2012) ("claims based on constructive fraud fail[ed] to meet the Rule 8 pleading standard") *with Promotional Mgmt. Grp., Inc. v. Hsieh*, No. CIV.A.SA–09–CV–367–XR, 2009 WL 2849630 (W.D. Tex. Sept. 1, 2009) ("Plaintiff's complaint fails to meet the heightened pleading requirements of Rule 9(b) so it cannot state a claim for constructive fraud."). Most recently, a sister district court of the Western District of Texas applied the heightened pleading standard to a similar tort–based "sham to perpetrate a fraud" theory of liability. *See Ogbonna v. USPlabs, LLC*, No. 3:13–CV–

16

347–KC, at 17–20 (W.D. Tex. June 10, 2014) (order granting in part dismissal of "sham to

perpetrate fraud" claim for failure to state a claim).

In *Ogbonna*, the Court adopted the heightened pleading standard based in part on

precedent established by the district court in the Northern District of Texas.[5]  However, the main

precedent cited throughout those cases, and by Defendants in their instant motion, *Shandong*

*Yinguang Chem. Indus. Joint Stock Co. v. Potter*, based its holding on Texas Business

Organizations Code § 21.223(b), which modified the *Castleberry* factors in regards to contract

claims only, not tort claims. 607 F.3d 1029, 1035 (5th Cir. 2010).  Specifically, the court stated

that the claim was subject to Rule 9(b) because it "require[d] proof that [the defendant]

committed an actual fraud against [the plaintiff]," which this claim does not require.  *Id.*

Closely analogous, the court in *Alexander v. Holden Business Forms, Inc.* considered

whether to apply the heightened pleading standard of Rule 9(b) to a constructive fraud action

brought under the Texas Uniform Fraudulent Transfers Act ("TUFTA").  No. Civ. A. 4:08–CV–

614–Y, 2009 WL 1406242, at *2 (N.D. Tex. May 20, 2009) *amended and vacated in part on*

*reconsideration*, No. Civ. A. 4:08CV614Y, 2009 WL 2176582 (N.D. Tex. July 20, 2009).  The

*Alexander* court noted that while a claim brought under one section of the TUFTA "requir[ed] an

allegation of actual intent to hinder, delay, or defraud[,]" claims brought under a different section

were based on constructive fraud and did not require "allegations similar to common–law fraud

as contemplated by Rule 9(b)." *Id.* (distinguishing *Indiana Bell Telephone Co. Inc. v. Lovelady*,

No. SA–05–CA–285–RF, 2006 WL 485305, at *1, *5–6 (W.D. Tex. Jan.11, 2006)).  Likewise,

the court in *In re Juliet Homes, LP* noted that because an actor's intent is irrelevant to

---

[5] *See Ogbonna v. USPlabs, LLC*, No. 3:13–CV–347–KC, at 18 (W.D. Tex. June 10, 2014) ("The sham to perpetrate a fraud theory requires the plaintiff to demonstrate that the entity to be pierced acted in a fraudulent manner.  Because the theory requires some showing of fraud, the plaintiff must satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements.") (citations omitted).

constructive fraud, "Rule 9(b)'s heightened pleading requirements do not apply, and the pleading of a constructive fraud claim must only comply with Rule 8(a)." No. 07-36424, 2010 WL 5256806, at *23 (Bankr. S.D. Tex. Dec. 16, 2010) (citing *Tex. Integrated Conveyor Syst. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 366 (Tex. App.—Dallas 2009, pet. denied) (citing Barnett v. Barnett, 67 S.W.3d 107, 126 (Tex.2001)); *SIPC v. Stratton Oakmont, Inc.*, 234 B.R. 293, 319 (Bankr. S.D.N.Y. 1999)).

The Court agrees that the tort–based "sham to perpetrate fraud" claim is not subject to the heightened pleading requirements. Holding it to the same heightened pleading standards of Rule 9(b) would create a procedural requirement that would make the substantive differences between a tort–based claim under *Castleberry* and contract–based claim under Texas Business Code § 21.223 virtually meaningless.

Having determined that the more lenient pleading standard under Rule 8(a) applies, the Court now considers the substance of the claim. Plaintiffs allege that "adherence to the fiction of the separate existence of the USP DEFENDANTS as entities distinct from each other will permit an abuse of the corporate privilege and would sanction fraud and promote injustice." Am. Compl. ¶ 8. Defendants reply that Plaintiffs "fail to allege any facts which suggest injustice would result if the Court acknowledges Defendants' separate existence." Defs.' Reply 6.

The Texas Supreme Court has recognized that "[t]he variety of shams is infinite." *Castleberry*, 721 S.W.2d at 275. One example is when a closely held corporation owes unwanted obligations, siphons off corporate revenues, sells off much of the corporate assets, or does other acts to hinder the ongoing business and its ability to pay off its debts; a new business may then start up that is basically a continuation of the old business with many of the same shareholders, officers and directors. *Id.* (collecting cases). In *Castleberry*, the Texas Supreme

Court upheld a finding of a "sham to perpetrate a fraud" when a contract debtor manipulated

corporate assets so that a contract creditor's claim could not be satisfied out of corporate assets.

*Id.* Plaintiffs have similarly alleged that USPLABS, LLC, Geissler and Doyle, have "constructed

a corporate shell game" involving multiple subsidiaries holding various valuable corporate assets

such as trademarks in an effort to manipulate corporate assets and shield them from legal

liability. This is sufficient to plead an injustice would result. *See Bell Oil & Gas Co. v. Allied

Chem. Corp.*, 431 S.W.2d 336, 340 (Tex. 1968); *see also SSP Partners*, 275 S.W.3d at 455

(explaining that "[b]y 'injustice' and 'inequity' we do not mean a subjective perception of

unfairness by an individual judge or juror; rather, these words are used in *Castleberry* as

shorthand references for the kinds of abuse, specifically identified, that the corporate structure

should not shield."). Accordingly, the Court denies Defendants Motion as it pertains to

Plaintiffs' "sham to perpetrate a fraud" theory for their tort claims.

## 2.  Plaintiff's Breach of Warranty Contract Claim

The Court now considers Plaintiffs' veil–piercing theories supporting their contract

claims. As previously stated, in a contract case, alter ego or "sham to perpetrate a fraud" may be

used to pierce the corporate veil only if (1) actual fraud is shown and (2) it was perpetrated

primarily for the direct personal benefit of the corporation's holder. Tex. Bus. Orgs. Code Ann.

§ 21.223(b); *see also Ocram, Inc. v. Bartosh*, 2012 WL 4740859, at *3 (Tex. App.—Houston

[1st Dist.] Oct. 4, 2012). Thus § 21.223 overruled *Castleberry* to the degree that a failure to

observe corporate formalities is no longer a factor in proving alter ego in contract claims, and it

eliminated constructive fraud as a means to pierce the corporate veil. *W. Horizontal Drilling,

Inc. v. Jonnet Energy Corp.*, 11 F.3d 65, 67–68, n.4 (5th Cir. 1994) (narrowing *Castleberry*'s list

to "three broad categories in which a court may pierce a corporate veil" under Texas law: (1) the

corporation was the alter ego of its owners and/or shareholders; (2) the corporation was used for illegal purposes; and (3) the corporation was used as a sham to perpetrate fraud); *Rimade Ltd. v. Hubbard Enters., Inc.*, 388 F.3d 138, 143 (5th Cir. 2004).

Actual fraud is "the misrepresentation of a material fact with intention to induce action or inaction, reliance on the misrepresentation by a person who, as a result of such reliance, suffers injury." *Trustees of Northwest Laundry and Dry Cleaners Health & Welfare Trust Fund v. Burzynski*, 27 F.3d 153, 157 (5th Cir. 1994); *see also Spring St. Partners-IV, L.P. v. Lam*, 730 F.3d 427, 442 (5th Cir. 2013) (quoting *Tryco Enterprises, Inc.*, 390 S.W.3d at 508 (defining actual fraud as "involv[ing] dishonesty of purpose or intent to deceive.")). Courts may deduce fraudulent intent from all of the facts and circumstances and generally look at the totality of actions to determine whether fraud was committed. *See generally Matter of Chastant*, 873 F.2d 89, 91 (5th Cir. 1989) (citations omitted); *see also Spring Street Partners*, 730 F.3d at 445 (finding actual fraud where the defendant created an LLC to shift assets and allowed the company's charter to lapse after litigation began).

Pleadings alleging actual fraud under the Texas Business Organizations Code § 21.223 are subject to the heightened requirements of Rule 9(b). *Shandog Yinguang*, 607 F.3d at 1035; *Med. City Dall., Ltd.*, 251 S.W.3d at 61 n.5 (citations omitted). "[T]he pleading requirements of Rule 9(b) may be to some extent relaxed where . . . the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge." *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 385 (5th Cir. 2003) (citing *ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)). In particular, a plaintiff may allege fraud upon information and belief if the complaint sets forth the factual basis for the plaintiff's belief. *See id.* (citing *ABC Arbitrage*, 291 F.3d at 350 n.67). However, "this exception 'must not be mistaken for license to base claims of

20

fraud on speculation and conclusory allegations.'" *Id.* (quoting *ABC Arbitrage*, 291 F.3d at 350 n.67).

### a. *Piercing the Corporate Veil in Contract Claims: Sham to Perpetrate a Fraud*

Defendants argue that Plaintiffs' allegations of "sham to perpetrate a fraud" impermissibly lumps all of the Defendants together without differentiating them. Mot. 16. Referring to the defendants collectively, "without distinguishing which entity or persons committed the various alleged fraudulent conduct," is generally insufficient under Rule 9(b). *Hidden Values, Inc. v. Wade*, No. 3:11-CV-1917-L, 2012 WL 1836087, at *4 (N.D. Tex. May 18, 2012). However, "[m]ultiple defendants' conduct may also be 'lumped together'" without violating Rule 9(b) "if the plaintiff's allegations elsewhere designate the nature of the defendant's relationship to a particular scheme and identify the defendants' role[s]" in the alleged fraud. *Bhatia v. Dischino*, Civil Action No. 3:09-CV-1086-B, 2011 WL 3820825, at *12 (N.D. Tex. Aug. 29, 2011) (citing *Steiner v. Southmark Corp.*, 734 F.Supp. 269, 274 (N.D.Tex.1990)); *accord DT Apartment Grp., LP v. CWCapital, LLC*, Civil Action No. 3:12–CV–0437–D, 2012 WL 6693192, at *8 (N.D. Tex. Dec. 26, 2012).

Plaintiffs allege that the Defendants knew their products were unsafe and ineffective, but nonetheless affirmatively represented the opposite to customers, including Decedent, on multiple occasions. Am. Compl. ¶¶ 51–58, 65, 67–68, 70–71, 73, 75, 76, 79–80, 83, 85, 89. Almost none of Plaintiffs' numerous allegations, however, identify which Defendant made which allegedly fraudulent misrepresentation.[6] *Id.* Plaintiffs instead allege generally that "Defendants," "USP Defendants," "USPLabs," or "USP" issued press releases and other statements falsely promising that the supplements were effective and safe. *See id.* Plaintiffs also fail to specify each

---

[6] Although Plaintiffs allege that Geissler personally made misrepresentations on fitness blogs and websites, this on its own is insufficient to connect the alleged sham to perpetrate a fraud to the remaining Defendants. *See* Am. Compl. ¶ 54.

Defendant's role in the alleged fraud elsewhere in the Amended Complaint. This is insufficient under Rule 9(b). Accordingly, the Court grants Defendants' Motion as it pertains to Plaintiffs' "sham to perpetrate a fraud" theory for their breach of warranty contract claim.

### b. Piercing the Corporate Veil in Contract Claims: Alter Ego

Because the Amended Complaint lumps the Defendants together in an attempt to establish fraud, Plaintiffs may only satisfy Rule 9(b) if the Amended Complaint elsewhere also contains adequate allegations that the defendants are alter egos of each other.[7] *See Infomart (India), Pvt., Ltd. v. Metrowerks Corp.*, No. Civ.A.3:04-CV-1299-N, 2005 WL 292433, at *4 (N.D. Tex. Feb. 7, 2005) (citations omitted). Although the Court earlier determined that Plaintiffs have stated a sufficient claim of alter ego, the Court's determination was based on a different standard. Here, because this is a contract–based claim, the Court may not consider allegations of constructive fraud or lack of corporate formalities. *W. Horizontal Drilling, Inc.*, 11 F.3d 67–68, n.4. Even so, Plaintiffs have still plead sufficient facts to support their alter ego claim. As noted above, Plaintiffs have alleged multiple instances of actual fraud. Am. Compl. ¶¶ 51–58, 65, 67–68, 70–71, 73, 75, 76, 79–80, 83, 85, 89. Moreover, even without considering the lack of corporate formalities, Plaintiffs have still plead that Defendants interchangeably share corporate resources, employees, office space, and are under common control and ownership. *Id.* ¶¶ 9–17. This is sufficient to support alter ego in a contract claim. *Mancorp, Inc.*, 802 S.W.2d at 228. Plaintiffs meet the first prong of the analysis.

A plaintiff may only pierce the corporate veil in a contract case if the actual fraud was perpetrated primarily for the direct personal benefit of the corporation's holder. *Ocram*, 2012

---

[7] Even if permissibly lumped together, Rule 9(b) still requires a plaintiff to assert the time, place, and nature of the defendant's alleged fraudulent behavior. *Bhatia*, 2011 WL 3820825, at *12 (citing Steiner, 734 F. Supp. at 273). Plaintiffs meet this requirement by referencing specifically dated letters, press releases, and studies published on specific websites.

WL 4740859, at *3. Plaintiffs allege that Doyle and Geissler have an ownership and shareholder interest in the USP entities. Am. Compl. ¶ 5. They also allege that the "alter ego entities were formed for the purpose of selling untested and dangerous" products and that Defendants' fraudulent misrepresentations were made "so as to maximize sales and profits." *Id.* ¶¶ 8, 137. This meets the requirements under the second prong. Accordingly, the Court denies Defendants' Motion as it pertains to Plaintiffs' "alter ego" theory for their breach of warranty contract claim.

### 3. Plaintiff's Substantive Claims

Defendants finally move that all substantive claims against Defendants be dismissed because they are premised on unsupported veil–piercing theories. Mot. 7. The Court has already determined that Plaintiffs have sufficiently plead alter ego and "sham to perpetrate a fraud" as methods of piercing the corporate veil in regards to the tort claims and that Plaintiffs have sufficiently plead alter ego in regards to the breach of warranty contract claim. Therefore, this argument does not apply. However, even in regards to the breach of warranty contract claim that the Court has found to be insufficiently plead, the Court rejects Defendants' argument. Piercing the corporate veil is not a separate cause of action, but a method to impose personal liability on parent companies, subsidiaries, shareholders and corporate officers who would otherwise be shielded from liability for corporate debts. *Shandong Yinguang*, 607 F.3d at 1035 (citing *Gulf Reduction Corp. v. Boyles Galvanizing & Plating Co.*, 456 S.W.2d 476, 480 (Tex.Civ.App.— Fort Worth 1970, no writ)). A particular Defendant may still be held directly liable for its own tortious activities regardless if one of the Defendants ultimately cannot be held liable for the legal obligations of its co-defendants. *Id.* Accordingly, the Court denies Defendants' Motion as it pertains to the underlying substantive claims.

### IV.  CONCLUSION

For the reasons set forth herein, **IT IS HEREBY ORDERED THAT** Defendants Jonathan Vincent Doyle, an individual, Jacob Geissler, an individual, USPLABS JACK3D, LLC, USPLABS, LLC, and USPLABS HOLDING, LLC's "Motion to Dismiss Plaintiffs' First Amended Complaint and Incorporated Memorandum of Points and Authorities" (ECF No. 99) is **GRANTED IN PART AND DENIED IN PART**.

**IT IS THEREFORE ORDERED THAT** Defendants' Motion is **DENIED** as to Plaintiffs' alter ego theory in regards to their tort claims.

**IT IS ORDERED THAT** Defendants' Motion is **DENIED** as to Plaintiffs' "sham to perpetrate a fraud" theory in regards to their tort claims.

**IT IS ALSO ORDERED THAT** Defendants' Motion is **DENIED** as to Plaintiffs' alter ego theory in regards to their breach of warranty contract claim.

**IT IS FURTHER ORDERED THAT** Defendants' Motion is **GRANTED** as to Plaintiffs' "sham to perpetrate a fraud" theory in regards to their breach of warranty contract claim.

**IT IS THEREFORE ORDERED THAT** Plaintiffs' "sham to perpetrate a fraud" theory in regards to their breach of warranty contract claim is **DISMISSED WITH PREJUDICE**.

**IT IS LASTLY ORDERED THAT** Defendants' Motion is **DENIED** insofar as it seeks to dismiss Plaintiff's underlying substantive claims.

**So ORDERED and SIGNED this** 23rd **day of October, 2014.**

**DAVID C. GUADERRAMA**
**UNITED STATES DISTRICT JUDGE**